## McKEE v. ELLIS.

An appeal will lie though the judgment be for less than three hundred dollars, where the
amount claimed exceeds that sum.   Const. art. 63.

A PPEAL from the Parish Court of New Orleans, *Maurian*, J.
The defendant appealed from a judgment against him for $300, in an action
for an assault and battery, in which the plaintiff claimed $1000 as damages.

*Robert,* for the plaintiff. The appeal should be dismissed. In actions for damages the right to appeal is determined by the amount of the judgment below—not by the sum claimed in the petition. See Howard's Rep. *Cooke* v. *Woodson,* 5 Cranch 13. *Wise et al.* v. *Columbian Turnpike Co.,* 7 Cranch 276. *Wilson* v. *Daniel,* 3 Dallas, 401. *Gordon* v. *Ogden,* 3 Peters 33. *Smith* v. *Honey,* 3 Ibid, 469.

*R. Hunt,* for the appellant. The 63d article of the constitution of Louisiana says: "The Supreme Court, except in cases hereinafter provided, shall have appellate jurisdiction only, which jurisdiction shall extend to all cases where the matter in dispute shall exceed $300.' To ascertain the matter in dispute. we must recur to the foundation of the original controversy: to the matter in dispute when the action was instituted: to the thing demanded by the plaintiff and refused by the defendant, and for which suit was brought. The descriptive words of the constitution point emphatically to this criterion; and in common understanding, the thing demanded, and not the thing recovered—the sum claimed (as in the present instance $1,000, damages,) and not that for which a judgment is rendered, constitutes the matter in dispute between the parties.

This construction not only comports with every word in the constitution, but avoids an inconvenience, which would otherwise affect the impartial administration of justice. For if the judgment was considered as the rule to ascertain the value of the matter in dispute, then whenever a judgment was rendered for less than $300, the defendant could have no relief, though the judgment should be most erroneous and injurious, while the plaintiff would have a right to an appeal and a revision of the cause—his demand (which is alone to govern him) being for more than $300. It is not to be presumed that the framers of our constitution intended to give any party such an advantage over his antagonist. 3 Dallas' Rep. 404.

But we are not without authority for the true meaning of this provision in our constitution.

"The 4th article, sec. 2d, of the former constitution of this State, provided as follows: "The Supreme Court shall have appellate jurisdiction only, which jurisdiction shall extend to all civil cases when the matter in dispute shall exceed the sum of three hundred dollars."

From the journals of the convention of Louisiana, held in 1844—1845, we learn, that the committee of the convention, to whom was referred the 4th article of the constitution of 1812, concerning the judiciary department of the State, reported the following, among other provisions: "The Supreme Court shall have appellate jurisdiction only, except hereinafter provided, which jurisdiction shall extend to all cases, when the matter in dispute shall exceed $500." When this provision came up for consideration before the convention, a motion was made by a delegate from East Feliciana (*Mr. Ratliff,*) to strike out $500, and to insert $300, for the avowed purpose of keeping the appellate jurisdiction of the court unchanged, so far as the value of the matter in dispute was involved.

The convention decided by a large majority, in the the proportion of 3 to 2, that the jurisdiction of this court, so far as it depends on the value of the matter in dispute, shall remain co-extensive with the jurisdiction of the Supreme Court under the constitution of 1812. The court cannot fail to observe that the very language of the 2d sec. 4th art. of the constitution of 1812, is copied into and embodied in the 63d article of the constitution of 1845. In adopting that language, the convention adopted it in the sense in which it had been understood, construed and acted on by the legislature, by the courts and by the people of the State. Indeed the convention were urged to adopt it, because it was well understood. A leading member of that body, to whom I have already alluded, (*Mr. Eustis*) now the Chief Justice of this court, while expounding the views of the Judiciary committee on the subject of the appellate jurisdiction of the court, said: "The committee propose the adoption of the words of the constitution of 1812. They are of opinion that no change ought to be made in them. They have been long since settled by legislative and judicial interpretation."

Let us see then how the provision of the constitution has been understood and expounded—how the words of the constitution have been settled by legislative and judicial interpretation. The legislative interpretation admits of no

doubt. The Code of Practice declares, as follows, article 874: "The Supreme Court has only appellate jurisdiction, which it exercises in all civil cases where the object in dispute exceeds the sum of $300." Art. 875: "The Supreme Court has jurisdiction, although the judgment appealed from be for less than $300, if the demand was for more than that sum."

Such is the legislative interpretation, confirmed by a long series of judicial interpretations. In *Hart* v. *Lodwick*, 8 La. 166, it was held, that inasmuch as plaintiff's demand exceeded $300, he was entitled to an appeal against all the appellees who had judgment in their favor, even against those whose demands were under $300. So, in *Buckner et al.* v. *Baker et al.*, 11 La. 462, it was held that plaintiffs, whose demand exceeded $300, were entitled to an appeal even against intervenors whose judgments amounted to $295 only. It was well settled, then, by these as well as by other decisions, that a plaintiff who claimed more than $300, had a right to appeal from a judgment for a sum less than $300. Of course, this rule was not construed to include a case in which a plaintiff made a fictitious demand for the mere purpose of obtaining an appeal; as if, in a suit on a promissory note for $1000, where the plaintiff could only recover that amount with interest, he claimed $1,000, damages. In every such case, the court promptly dismissed the appeal as an attempted fraud on its jurisdiction. But where the value of the thing claimed exceeded $300; where a *bonâ fide* demand was made for a sum exceeding that amount, or where, as in present action, the law prescribed no limitation as to the amount to be recovered, and the plaintiff, who had a right to estimate his damages at any sum, demanded more than $300, the plaintiff had a right to appeal from a judgment for less than $300. It was equally well settled by the decisions of the late Supreme Court, that the defendant was entitled to an equal right of appeal from a judgment for less than $300, when the plaintiff in his original demand claimed more than $300. In *Philips* v. *Stanley*, 1 La. 246, plaintiff sued for $1,000, damages. The verdict fixed them at one dollar. Defendant appealed. The court held that he was entitled to an appeal. "It is the sum claimed," said the court, "and not that for which judgment is rendered, which confers jurisdiction on the Supreme Court." So, in *Lewis* v. *Clark*, 2 La. 437, plaintiff sued for $800, and damages. The court assessed his damages at $192 76. Defendant appealed. The court held that he was entitled to an appeal. They said: "It has been repeatedly decided, that it is the sum claimed, and not that recovered, which confers jurisdiction on this court." So, in *Gerber* v. *Marzoni*, 3 Rob. 371, defendant appealed from a judgment for less than $300. The court refused to dismiss the appeal. They said: "The jurisdiction of the Supreme Court is to be tested by the value of what is claimed in the petition. Whatever may be the amount of the judgment given, either party has a right of appeal." It would be easy to cite other decisions to the same effect. But it is sufficient to observe that the entire series of decisions of the Supreme Court, on the right of plaintiff as well as of defendant to appeal from a judgment for less than $300, where the demand was for more than that sum, is uniform and unbroken, from the adoption of the constitution of 1812 up to the year 1846, without a solitary conflicting decision, without even the dissenting opinion of a single judge.

Surely, then, in adopting the provisions of the constitution of 1812—in refusing to make any change in the words of the provision, because they had long since been settled by judicial and legislative interpretation—the convention expressed as strongly as they could, by words and by action, their determination to adhere to the construction put upon the provision for a period of thirty-three years, and universally acquiesced in by the people of the State; a construction sanctified by time, approved through a series of years, and reaffirmed and republished by the highest judicial tribunal of Louisiana, at the very time the provision was adopted by the convention. Si de interpretatione legis quæratur, in primis inspiciendum est quo jure civitas retro in ejusmodi casibus usa fuisset. ff. 1, 3, 57. If the construction of the words of the constitution, as a question of original interpretation, *res integra*, admitted of doubt, the deliberate action of the legislature, and the solemn and repeated decisions of the Supreme Court have long since settled the construction too firmly to be shaken, without well founded alarm to the people. "Miserable" says a great judge, "miserable indeed must be the condition of that community, where the law is unsettled, and decisions upon the very point are disregarded when they again come di-

McKee
v.
Ellis.

rectly or indirectly into discussion. In such a state of things, good men have nothing to hope. and bad men nothing to fear."

In vain was it attempted, in the convention of 1845, to restrict the jurisdic‐ tion of this court within narrower limits, and to shut out a large class of suitors on account of the smallness of the matter in dispute.

To give a novel construction now to the words of the constitution, and thereby to exclude from this court persons, who, under the well settled and uniform construction of the same words in the constitution of 1812, were entitled to an appeal to the Supreme Court, would frustrate the intention of the convention. It would be a fraud upon the constitution. It would be to alter, and not to ex‐ pound the constitution.

The reasoning by which the appellee seeks to oust this court of jurisdiction over the present case, is not less startling than the object sought after.

By the judiciary act of 1789, an appeal is allowed from the Circuit Courts to the Supreme Court of the United States in certain cases, where the matter in dispute exceeds $2,000. The Supreme Court of the United States have de‐ termined that their jurisdiction depends on the sum or value of the matter in dispute in that court, and not that which was in dispute in the Circuit Court; and that therefore a plaintiff, who sues for more than $2,000, may appeal from a judgment for less than $2,000, but that the defendant would not be entitled to an appeal from such a judgment. As the words of this statute are similar to the words of the constitution of Louisiana, the counsel for the appellee contends that we should reject the construction put upon the words of our own consti‐ tution by our own courts, and adopt an interpretation similar to that put upon the statute of the United States, by the courts of the United States; and he refers us to Howard's Reports. 3 Peters' Reports 33. 7 Cranch, 276. 5 Cranch 13. and 3 Dallas, 401.

The case from Howards Report's, is a mere repetition of the point decided in 3d Peters' Rep. 34; and the case in 3d Peters, *Gordon and others* v. *Ogden*, is based upon the authority of *Wise* and *Lynn* v. *The Columbian Turnpike Company*, 7 Cranch 276, decided in 1812, and upon the settled practice of the court, which had conformed ever since to that decision. In pronouncing their opinion, the court admitted that the case from 3 Dallas, 401, was directly in point; and that it turned on the principle that, the jurisdiction of the court depended on the sum which was in dispute before the judgment was rendered in the Circuit Court. They added, that although that case was decided by a divided court, and although they thought the jurisdiction of the court depended, by a true construction of the statute on the value of the matter in dispute in the Supreme Court, they "should be much inclined to adhere to the decision in *Wilson* v. *Daniel*, (3 Dallas 401,) had not a contrary practice since pre‐ vailed." The court then showed that the case from 5 Cranch, 13, was not in point; and relied upon the decision in 7 Cranch 276, overruling the decis‐ ion in Dallas, and upon the practice of the courts from that time up to 1830. It is clear then from the language and reasoning of the Supreme Court of the United States, that if the decision in *Wilson* v. *Daniel* had been supported by subsequent decisions, and conformed to in practice, the court would have ad‐ hered to it. Thus, the true principle to be extracted from the cases cited by the appellee proves fatal to his object.

But had there been no such principle in these cases, the notion that we should abandon the construction put by the legislature and courts of Louisiana upon a clause in our own constitution, and adopt the construction given by the courts of the Union to a similar clause in a statute of the United States, when there is no collision between the clauses, is not to be tolerated. It is a principle universally recognised that the judicial department of every government, where such department exists, is the appropriate organ for construing the statutes of that government. The Supreme Court of the United States have invariably held that, in cases depending on the statutes or constitution of a State, the set‐ tled construction of those statutes or of the constitution by the state courts, must be regarded. The exposition of the law is a part of the law; a fixed and received construction by a State, in its own courts, of its constitution and stat‐ utes, makes a part thereof; and the Supreme Court of the United States is bound to conform to such a construction. It would be a perversion of principle, if the judicial exposition of the laws of a State by the state tribunals, should be disregarded. If this be the rule for the construction of the constitution of

the State, when it comes immediately and directly for exposition before the McKee *v.* Ellis. Supreme Court of the United States: if that Supreme Court be bound, as it has determined it is bound, where the highest judicial tribunal of a State gives a different construction to a statute, from the exposition formerly adopted by the Supreme Court of the United States, to conform to the construction of the state tribunal, it is not easy to understand, how the fixed, received construction, given by Louisiana herself, to the words of her own constitution, in her own courts, can be disregarded, for the purpose of conforming to another and a contradictory exposition of similar words in a statute of the United States, by the Supreme Court of the United States.

The judgment of the court was pronounced by

SLIDELL, J. This is an action for an assault and battery. The damages are laid in the petition at one thousand dollars. There was judgment against *Ellis* for three hundred dollars, and he has appealed. The appellee asks that the appeal be dismissed for want of jurisdiction in this court.

He rests his motion mainly on decisions of the Supreme Court of the United States. The judiciary act of 1789 gives a writ of error to that court from Circuit courts, in certain cases, where the matter in dispute exceeds the value of two thousand dollars, exclusive of costs. Under this statute, that court has repeatedly held, and it is now the settled interpretation in that tribunal, that, although a greater amount than two thousand dollars be claimed, yet, if there be judgment against the defendant for less than two thousand, the *defendant* is not entitled to a revision by the Supreme Court of the United States. The language of our constitution, except the expression "exclusive of costs," is substantially the same. Art. 63 declares that, "The Supreme Court, except in cases hereinafter provided, shall have appellate jurisdiction only, which jurisdiction shall extend to all cases when the matter in dispute exceeds three hundred dollars." - The appellee asks that we should apply the interpretation adopted in like cases by the Supreme Court of the United States, and consider the matter in dispute as to be tested by the amount of the judgment in the lower court; while the appellant, on the contrary, contends that the amount in dispute must be ascertained by the amount claimed in the petition.

Whatever may be the relative weight of argument on the abstract question of interpretation of these expressions "*matter in dispute*," found in the act of 1789 and in the constitution of Louisiana, there is another consideration which forbids us to to treat the question in the abstract. The former constitution of this State, which gave place in 1845 to that under which this court was established, contains in the judiciary clause the same expressions, "*matter in dispute*," as article 63, already cited. During a period of thirty years, it received from the Supreme Court the interpretation which the appellant contends should be given to the existing constitution. It is proper also to remark that, the legislative harmonized with the judicial interpretation. See Code of Pract. art. 875. In copying those words from the constitution of 1812, we must presume that the convention were aware of the construction they had uniformly received, and intended that, in the new constitution, they should have the same meaning. *Motion to dismiss refused.*